Díaz v. Bondi And I see that we're set up with the Zoom for the respondent. So we'll begin with Mr. Tabor. Thank you, Your Honor. Good morning. And may it please the Court, Jacob Tabor for the petitioner, Salvador Díaz. The immigration judge here incorrectly decided the particularly serious crime issue without hearing mental health evidence. Then, even though matter of BZR had changed the legal landscape, the judge refused to reopen the issue at the merits hearing and never gave Mr. Díaz the opportunity to present this relevant mental health evidence. This was a clear due process violation. That's on the first appeal that he didn't reopen it, right? I mean, the BIA sent it back to be considered. Yes, Your Honor. And after that, Mr. Díaz requested by letter that the IJ reopen the hearing and allow for the presentation of new evidence, testimony, documentary evidence on remand, and the IJ denied that request as well. So there are multiple instances at which Mr. Díaz tried to get the opportunity after BZR was decided, both at the merits hearing and after the first BIA remand, to present this evidence, and the IJ would not hear it. So after the remand and before the ruling on the petition, where in the record is the request for an evidentiary hearing? I do not have that in front of me, Your Honor. I'm happy to make a suggestion, a submission after. But there was a letter that is in the record and that is referenced in the IJ's. Could you tell us on rebuttal if you could identify it, and we can ask for it subsequently if we need to. If you've been granted a hearing, what evidence that's not already in the record would you have put in? Certainly, Your Honor. So under a matter of carball, in order to undertake this particularly serious crime analysis, the court has to consider the facts surrounding the conviction at issue. And so that would include things that are entirely absent from the record that Mr. Díaz was not allowed to testify about, like the identity of the victim, any relationship between Mr. Díaz and the victim, the facts immediately prior to the conduct at issue, if there was any aggression or antagonizing by the victim, and perhaps most saliently, to a matter of BZR, whether Mr. Díaz was experiencing any symptoms of psychosis at the time of the incident. So if I just, I mean, just looking at the record that we have, right? So in the first PSC hearing, Mr. Díaz said, or his counsel said, that his mental illness at the time was the reason for his danger and bore on his intent to commit the crime. So this was mitigating the danger at the time, the fact that he had some sort of mental issue. And at this point, he no longer has that, right? Like that was an argument that you had made. And then at the CAT hearing, by that time, a matter of BZR had come out, right? And then his counsel says, we've, the evidence that's already in the record shows his strong compliance with his medications. So we asked the court to reconsider Mr. Díaz's eligibility for withholding, right? The suggestion was that the evidence was already in the record. And then at the summation, they said that one of the reasons why, you know, the FIJ should find in his favor on the CAT issue is that when he's in an agitated state, Mr. Díaz responds aggressively to authority figures. So the idea was that a lot of his violent tendencies was because of a mental health question. And then when Mr. Díaz appeals to the BIA, the brief says, counsel for Mr. Díaz repeatedly urged I.J. Auslander to consider whether Mr. Díaz's mental health played a substantial motivating role in his attempted assault conviction. And then it says, in so concluding, I.J. Auslander failed to give a reasoned analysis that engaged the evidence Mr. Díaz presented. So given all of that history until the BIA sent it back for reconsideration of the BZR issue, wouldn't anybody have kind of understood what he's asking for is a different analysis applied to the evidence he already presented? Respectfully, Your Honor, I think that the attorney was playing the best of a bad hand by arguing based on the – there was mental health evidence that came in on the CAT issue and on the competency issue. Those were geared towards Mr. Díaz's diagnosis and what might happen to him if returned to the Dominican Republic. But it was not geared towards what was happening on the day of the – So at the PSC hearing, there was this evidence that his mental health issues was responsible for the violence – for the violence, and that would explain why he's not a danger. The I.J. the first time said, I'm not – I don't think that's relevant. I'm not going to consider it. But the evidence was presented, right? Respectfully, there was attorney argument, but there was – and there was attorney argument based on the neuropsych evaluation conducted for the competency evaluation that had already occurred. And so that was the evidence that the attorney tried to marshal. But what the I.J. repeatedly dissuaded was any testimony by Mr. Díaz. He denied the request – Well, I was – go ahead and finish that. Oh, he denied the request for Mr. Díaz to be able to come testify in person as an accommodation. At the start of the PSC hearing, he said – this is record 436 – It's not being an accommodation as versus being – remaining in detention, right? That's not about the substance of it. So respectfully, we would urge that that accommodation was necessary to enable Mr. Díaz, who has a diminished cognitive capacity, to be able to testify effectively to be there in person. And the reason – Well, that's a separate question. Maybe we could get to that. But I'm sort of interested in the BZR question. Yeah. So you said a moment ago that part of the evidence you would have introduced is who the victim was and their relationship. Is there some evidence that you could introduce that he had a one-off fight with this victim or this particular victim triggered his issues in a way that no other victim would? Is that the idea? I mean, that would be outside the record, Your Honor, because Mr. Díaz never had the opportunity. We're talking about whether you should have been able to introduce evidence. We often do consider what the evidence would have been that you'd be able to introduce. So I'm giving you permission now to tell me what it would have been. If we're engaged in a prejudice analysis, right? That's part of the question. Right. So on that, Your Honor, this Court held in Mantilla that prejudice is not required when – Mr. Díaz was prejudiced, but prejudice is not required to be shown when the agency ignores its own regulations, which it did here by not permitting Mr. Díaz to testify. But there's two potential arguments. And I think – so there's one, that there was a problem because they had their regs and they were supposed to do it, and the other was whether or not he was able to defend – present the best defense for himself. And I think what my colleagues are trying to ask is to figure out what he would have presented had he had more time. If you don't mind when answering that question, I'd be interested in hearing your thoughts on how we should read BZR. Is it that only mental health information can inert the benefit of the petitioner? Or is there some other way? Does it allow for a totality that some will be for the petitioner but some will be – might cut against the petitioner's interest? How are we supposed to read that? Sure. So starting with that question, I don't think this is a heads-I-win-tails-you-lose decision. I don't think that BZR intended a one-way ratchet. I think that it is consistent with the matter of Carball that considering all of the facts surrounding the – and the circumstances surrounding the conviction means all of the facts and circumstances, which includes mental health evidence. There's an excellent example in BZR of the sort of mental health evidence that might be mitigating, where the mental health condition of having – a victim of domestic violence having PTSD, potentially involved in a crime against her attacker or her abuser, that might not show that this person is otherwise generally a danger in other contexts. Here – They're saying about the circumstance that triggered the reaction, right? So she gets PTSD because of the abuse and lashes out at the attacker. And so that doesn't – that might be a crime where the elements suggest it's a very serious crime, but the circumstances suggest that maybe that doesn't mean that she's a danger to the community, right? Yes, Your Honor. So is there something about this crime here that's like that, that his mental health issues were triggered by this particular victim, such that you wouldn't think that he would ever attack a different victim? So all we – again, all we have in the record is a one-page criminal complaint. You're saying all we have in the record, but I'd like to know, like, if we were to allow him to introduce other – or if the process were to proceed and he could introduce other evidence, what would that evidence look like? I don't know what Mr. Diaz would testify to about whether he's experiencing psychosis. You don't have to show prejudice because – and it's not really the agency regulation, but it's a statute that says what, that he needs to have a reasonable opportunity to develop his case, right? So the question of whether he has a reasonable opportunity to develop his case has to depend on whether it's reasonable for the – for the IJ to say, I don't need additional evidence, right? Wouldn't that depend on the kind of evidence he's proffering? I don't like the – I just want an answer to that. Okay, but when you answer, I do want – I don't want to cut you off, but, like, I thought that the attorney also said that there were all sorts of stuff that they wanted Mr. Diaz to be able to testify to, but when they denied it. And so maybe that list would answer Judge Monash's question. So I – I'm not sure I have the list that you're thinking of. No, but there was a point where the – when they were asking for more evidence from Mr. Diaz, the lawyer explained all of the things that if permitted to testify, he would testify to. So I was under the impression that your answer to his question would have been that list of items. Yes, Your Honor. I believe, again, that the – what counsel said that Mr. Diaz needed to be able to testify to is, again, precisely this issue that the BIA found as positive, which is there was no evidence in the record that he was experiencing symptoms of psychosis at the time. Why was there no evidence? Because he was not allowed to testify at the hearing. That's not what the IJ or the BIA said. They said that, yeah, his mental condition did, in fact, lead to the violent conduct and exacerbate it, but that doesn't outweigh the culpability of actually committing violence against the individual, right? So I would respectfully direct the Court to page 46 of the record where the – page 46, excuse me – page 44 of the record in the BIA's decision where the Court says, although the Respondent states generally to his neuropsychological evaluation, he does not point to record evidence supporting his assertion that in the previous sentence it was possible he was experiencing psychotic symptoms at the time of the crime. So that's precisely the missing evidence that would have supported potentially a finding that this was not a particularly serious crime, that he was not allowed to submit before BZR. He was not ever given a chance to supplement the record after BZR. But the BIA says that we agree that he was experiencing symptoms and that led to the – right. Well, the Court acknowledges the Respondent's mental health conditions may have exacerbated his criminal conduct. Sorry, this is the IJ. Yeah, the BIA – what you read is the BIA's basis for the decision. So that's what we have to consider. Yes, Your Honor. We're limited to that. Right. So although the Respondent – so this is the BIA. Although the Respondent's mental health conditions may have exacerbated his criminal conduct, he nonetheless engaged in serious violent actions against another individual, right? Yes, Your Honor. And on appeal, the Respondent does not explain how the existing record evidence related to his mental health is probative of his intent in a way that impacts the dangerousness analysis, except for suggesting it's possible he's experiencing psychotic symptoms at the time of the crime. In that context, the BIA is not saying we don't know that he was experiencing psychotic symptoms at the time. The BIA is saying it's not enough to say that you're experiencing psychotic symptoms at the time. It has to be like the domestic violence example, that there's something about the circumstances of the crime that committing it shows that you're not generally in danger. Right? Respectfully, that's not how I read the BIA's decision. I read the BIA saying that this evidence might be relevant, but it's missing from the record. And again, the reason it's missing from the record is not to beat a dead horse. So you think that if, in fact, he could show that he was experiencing psychotic symptoms at the time of the crime, it would mean that it's not a particularly serious crime? I'm saying that that would be relevant to the analysis. That's evidence the IJ should on remand consider. And then we're not asking this Court to make a factual determination, but simply to find the law was not followed. Why would that be? I mean, why would it be? First of all, I don't think I read the BIA opinion that way. But why would it be that if he was experiencing psychotic symptoms at the time of the crime, that would mean that it's not a particularly serious crime? So the requisite analysis is whether this crime looked at in the circumstances of the crime, not generally, not his criminal history, which the IJ improperly looked to, but the crime itself shows that he is particularly dangerous. This was an attempted assault where he was waving a knife in someone's direction and made a small cut to his chest. So there was contact there. And we just don't know in the record what the circumstances were that was he feeling threatened. Was it a real threat? Was it an imagined threat? There's just not. It's not in the record. And I guess I had understood, this goes to the question of what you would potentially show on a man, that he was experiencing some kind of conduct as a result of his mental health issues. Wouldn't you further have to show that those mental health issues are controlled through drug treatment of some kind in order to make an argument of that being cutting against dangerousness as opposed to in favor of dangerousness, and that he would be able to maintain himself on appropriate treatment even when not detained? I haven't heard you. My first question was, what would you show on a man, if you were given a man? And I haven't heard all of those pieces.  Yes, Your Honor. I think that, you know, the law in BZR is still being developed by the courts. I think that's certainly a reasonable direction to go. And I think on remand, we would show that Mr. Diaz is now, he's no longer detained. He got a habeas granted. He's living in an assisted living situation. He's still taking his medication. His symptoms are well controlled. That will all be in the record if we have a remand. And so we believe that he'll continue to remain medicated now that he is in a more stable situation. He was, you know, had been living with his parents. His mother died. He ended up in homelessness. But now with the, you know, intervention of, quite frankly, this proceeding and then social work, et cetera, now he's in a much more stable situation. He is taking his medication. And we believe that so long as he continues to be medicated, that the dangerousness of this instance, incident, will not recur. Is all of that relevant to a PSC determination under BZR? Potentially, yes, Your Honor. I think on remand, the court would have to decide how far outside the circumstances of the conviction to go. I think in order to understand and evaluate the relationship between the schizoaffective disorder and the crime, you would have to think about things like the effect of medication. I think that's reasonable. But, again, this is law that's still being developed. So the example that's given in the matter of BZR is circumstance specific. There's something about the interaction between an abuse victim and an attack on her abuser that shows that it's not, doesn't show a propensity for dangerous conduct toward others, right? Yes. But you're saying we should understand it to be much broader than that, which is if there's any mental health condition in which he does act violently, even toward lots of people, if later he can have the mental health condition treated, then, therefore, that excuses the crime. And it's, if so facto, not a particularly serious crime? I certainly wouldn't say it excuses the crime. And I think the Attorney General is very clear. For purposes of the bar on immigration relief, it would. It would only come into effect, though, if it weren't per se, right? Like if we were in a position where we were, it was something that was in the ambent and then we had to consider the circumstances, right? So it's not a, it's not broad, right? Correct, Your Honor. It's not an automatic, and again, really what we're arguing for is that the I.J. had to hear this evidence and consider it, not that it mandates a certain outcome. I guess, to me, the argument you're making sounds pretty broad. So maybe you could help me out by explaining why it's not this broad. But what I hear you saying is if in the first, in the assault, he was experiencing psychotic symptoms and if now his psychosis is being treated with medication, therefore we should not understand the assault to be a particularly serious crime because the medical condition is now under control. That seems to suggest that whenever somebody is attacking somebody else for a mental health reason that can be treated later, it should not be considered a particularly serious crime. Is there something about this case that makes the rule much narrower than that or is it really that broad? Two answers to that. First, Your Honor, I don't think the court needs to ever reach that question in order to decide the due process issue here and to remand for the I.J. to make that determination on the basis of evidence. If it were to come back up, certainly then there might be a different appeal. But I don't think the court has to get that far. But I also don't think the rule we're asking for is nearly that broad because it hinges on all of the circumstances. And there are different kinds of crimes. But it's also not that broad because, to Judge Perez's point, so if a sentence is a five-year sentence, then it's per se PSC. If it's less, so that already narrows the category of what Judge Menasche proposed. If it's less than that, then you have two steps, as I understand it. And the first step is do the elements of the crime bring it within the category of PSC? I think that's not really disputed here. They would. But then do the circumstances indicate dangerousness? And I thought that's where your argument was, that as to the relevance of whether the crime was the result of a psychosis and whether that could be appropriately treated would go to dangerousness. Yes, Your Honor. The one point I would make is that I don't think we would argue for any sort of per se rule that any sort of crime of violence that was the result of a psychotic break would not be particularly serious. There could be some very particularly serious crimes, depending on what was the injury to the victim, what were the circumstances, where mental health might not take that outside the realm, but where it's menacing someone essentially with a knife. So you're saying it's a kind of balancing test between the mental illness and the extent of the violence? So if he had stabbed the person to death, it wouldn't matter that he was experiencing a psychotic episode, but because he only injured the person, it does matter? Presumably if he had stabbed someone to death, he would have had more than a five-year sentence, so that would be the end of the inquiry. Yes, Your Honor. So do you agree that if he were sentenced to more than five years, it wouldn't matter what the mental health condition was? Yes, Your Honor. That's my understanding of the regulation. He would not be eligible for this kind of relief, regardless ofó because we don't have to delve into what is particularly serious crime mean within this provision because that would be an aggravated felony. Okay. But you did say a moment ago that it is a balance, right, between the mental health and the extent of the violence. I think that's what matter-of-carball dictates, that the agency do a comprehensive, fact-intensive analysis that's not always going to go in one direction, but has to look at each of these elements and make a determination. So you're saying that means that it is possible for the immigration adjudicator to say, okay, the mental health issue was responsible for the violence, but I don't thinkóbut it doesn't outweigh the seriousness of the crime, right, or the intentionality of it? There are innumerable potential factual settings that the court, the IJ, could review and reach different outcomes on. I think the court hereó But in this case, that's what the agency did, right? They said, okay, the mental health issue is responsible for the violence, but we don't think it outweighs the seriousness of the crime. You're saying you could reach that conclusion. Just the problem is there's some evidence that you think it didn't consider reaching that conclusion. Yeah, I think the issue is that Mr. Diaz was precluded from testifying. This is a very unusual situation also that we're ruling on becauseó Precluded from testifying what? That he was having a psychotic episode when he engaged in the violence. Potentially, yes, if that's his testimony. Can I askóso you said a moment ago also that there's no prejudice requirement because the agency is not complying with its own regulations. By that, you mean the statute that says he needs to have a reasonable opportunity to present his case, right? Yes, Your Honor, that's what we argued in our case. So if, in fact, it were the case, let's say, just to make it an easier hypothetical, Mr. Diaz's lawyer said, we don't need any more evidence. We think all the evidence is in the record. And then on the remand, they just do the BZR analysis based on the existing record. There would not be a violation of the statute, right? Because he said, I think that there's enough evidence. So respectfully, I still think that the court had an obligation there under the statute to allow Mr. Diazó You're fighting the hypo. Okay. Then maybe I missedówould you mind repeating theóI'm so sorry. So the statute says the alien needs to have a reasonable opportunity to make his case, right? If, in fact, Mr. Diaz's lawyer had said, there's enough evidence in the record, I just want you to do the BZR analysis to the existing record, I don't need to present more evidence. It would not be a violation of the statute not to have an additional hearing, right? Yes, on those facts. Those aren't the facts here, but on those facts. So really, whether there's a violation of the statute depends on whether he requested an opportunity to introduce more evidence and whether the IJ acted within his discretion to deny that request, right? No, Your Honor. Respectfully, that was a second due process violation. The first due process violation was at the merits hearing when counsel requested to reopen in light of BZR, and the IJ denied that and denied the opportunity to present more evidence at that time. So there are two separate instances in which my client was precluded from putting in evidence that he had a right to put in. The two separate instances, so you're saying this hearing, well, they didn't reopen the PSC question. You're saying there was a request to introduce evidence on it? I said there was a request. Obviously, because the reconsideration of the PSC issue was denied, there was no opportunity to put in more evidence on something that was close. The reconsideration of the PSC issue did occur after the remand from the BIA, right? Yes, I'm talking about the first proceeding. Before the remand. At the June hearing. Let's talk about after the remand. Was there a request at that point to introduce new evidence? So, again, and we'll give you the cite. It's in our brief, but there was a letter. So presumably either there has to have been a request that was denied or an insufficient opportunity to make some sort of request given, you know, I mean, if either the remand and then the decision comes out without any clear process, I suppose that would resolve. Yes, Your Honor. And I do think here where the record shows repeatedly the IJ is dissuading my client from testifying and telling the attorneys no interest in hearing my client's testimony, that also complicates things because you're trying to make the best case you can on the record you have. And if you're going to antagonize the judge. Yeah, but you've got a remand from the BIA. Yes, Your Honor. In light of BZR. So presumably that would mean something. Yes. It either means consider the, you know, potentially it means consider the existing record to see whether you're entitled to relief under BZR or open up the record for evidence to be put in, in light of BZR, and then make a determination. Respectfully, I think the latter is certainly required as a matter of due process where there is never an opportunity, where the entire preliminary particularly serious crime determination is made before. That's a constitutional argument, not a statutory argument. Yes, Your Honor. Well, I have one question. On the statute, did the BIA address the statutory entitlement to a hearing? Not at all. And that was another error that requires remand. Okay. So just in terms of your saying about having to make a request, I mean, is this right? I mean, the brief to the BIA by which Mr. Diaz got a remand says that the error was that Mr. Diaz urged the IJ to consider whether his mental health played a substantial motivating role in his attempted assault conviction, and by refusing to do that, the IJ failed to give a reasoned analysis that engaged the evidence Mr. Diaz presented. Right? That's in the brief, right? So just from that description, it sounds like what you're asking for is an analysis of the evidence that was already presented. Well, that's the BIA brief that is arguing on the basis of the record that was available that there was an error, and that was not necessarily the venue to make these constitutional due process arguments, which are directed to this Court under the statute. Okay. I've got a doctrinal question, and I'm hoping you can help articulate how we work around it. We have the IJ saying something to the effect of, the Court previously finds and still finds that the mental health conditions and respective history underscore his past and future danger profile, and by mentioning future conduct, we have a legal error there. We have the BIA trying to unscramble the egg, but what I'm hearing you suggest is that you would be introducing evidence suggesting that because of his medication and because of his stability, he would not be a future danger. So how do I put both of these pieces together in a way that doesn't put the burden on or put IJs in a position where they are not looking at information that's not possible, but at the same time being able to do a holistic analysis? That's right. I think that's something challenging about BCR, that it did not sort of lay a roadmap for that. I'm not asking you to try to figure it out. I'm inviting you to help me. Yes, Your Honor. You're asking a challenge. I am. So the distinction I would draw is between what the IJ did here, which was rely heavily on prior convictions unrelated to say, I've made up my mind, this is a dangerous person who will always be dangerous, and I'm not going to limit myself to the conviction at issue. That's what you can't do under a matter of Carball. Under BCR, when considering the relationship between medication and the ongoing mental illness of the person, I think that gives you context for understanding what is the salience of the crime of conviction. So using the domestic violence example, if you just had the facts of a hypothetical domestic violence case where the victim struck with a blunt object over the other person's head, you might say, well, that sounds like a very dangerous person. You get more context about what was the relationship between those two people, what was the mental illness, and you realize that this is not likely to recur. So, too, the mental health evidence and the evidence of the ongoing medication, et cetera, will help give context to determining whether— But that's a difference between your case and the illustration in a matter of BCR, right? So as we just explained, if we're talking about the victim of domestic violence and we say the reason for the violence of the victim toward her abuser was because of PTSD that was triggered by the abuse, we don't need to know anything in the future about the medical treatment and whether it's taking and whatever. We can look at the circumstances of the crime to determine that it's not going to recur or doesn't show dangerousness. But your argument is, well, he was having a psychotic episode, and we should look to the future and realize that it's being treated now, so he's not going to be dangerous anymore. So your theory, your extension of BCR requires looking to the future, right? Respectfully, I would disagree about that characterization of PTSD as so narrowly focused on one potential trigger of the post-traumatic stress. And so I think that anyone in that situation might have some risk in the future, depending on what the triggers are, of having another violent outburst related to PTSD. So in that matter, BCR actually requires you to look into the future to see how the alien is being treated for the mental health issues? I think it requires examining the alien's mental health status at the time of the hearing and what medications or what treatment they have had to determine whether it's still working. So when the CIA says we're going to just discount all this talk about subsequent to the crime, the way what the mental health issues show about Mr. Diaz's forensic information, you actually think that that was not necessary because the agency does need to look at how he's being treated and how now, whether under his treatment conditions, he's prone to violence. What I think the BIA said that it was not going to consider, I think the BIA still necessarily considered it because you can't unscramble the egg, was the IJ's analysis of those prior criminal convictions and the facts of those and determining that this is a dangerous person and will be dangerous in the future. Is that prediction, it is not necessarily, you have to make a prediction here. Looking to the future is what this test requires. But you don't make a prediction, right, because the idea is it's a particularly serious crime bar. The hallmark of a particularly serious crime is that the commission of the crime shows dangerousness to the community, right? So you can look at the particular crime to determine that. You don't necessarily have to look into the future. But your theory about how we should evaluate this case does require us to take evidence about how he's being treated now and whether the mental health condition is being successfully treated or being resolved in some sense. Respectfully, I had always looked at it as when you're asking about the dangerousness of the applicant, it's if we let him stay here, will he be dangerous? And the key is what is the set of facts we're considering to make that prediction? What you can't do is go do a far-reaching search of the record and look at everything he's ever done. What you're supposed to do is look at this crime, do the facts of that crime. I guess what I'm saying is the reason why you look at the crime is because the particularly serious crime bar is focused on the commission of the crime, right? Yes. So usually we say we don't look at other things, other indicia of dangerousness. But in order to adopt your argument that we can say that the particularly serious crime did not show dangerousness, we would have to look at his current medical treatment and whether the psychosis is under control, right? Yes, you're right. In my view, the particularly serious crime analysis always requires making a prediction. It's just a prediction based on a narrower set of sources than what the I.J. did by looking at his other crimes and then saying on remand, in a footnote, I think the BIA got this wrong. I still think all this stuff is relevant. But on that point, I mean, that's the thing that happens all the time, right? The BIA can say we don't think that this argument from the I.J. was persuasive, and so we don't rely on it. And we have a long line of cases that say when the BIA does that, we don't rely on that ground because the BIA refused to adopt it. But your argument is different. Your argument is that you can't unscramble the egg, right? Yes. Your argument is that it was so imbued with the improper future or broad-bracing view that you can't cure it by saying we're not looking at that. Correct, Your Honor. There is no – What was imbued? The BIA's decision? The I.J.'s analysis of future – Who cares about the I.J.'s analysis, right? Like we review the decision of the BIA. The BIA oversees the I.J. If the BIA says the I.J. did something wrong and we're rejecting something the I.J. said, the BIA has the final say, right? Yes, but there's nothing – once the BIA throws out that analysis of the particularly serious crime, there is nothing left to review. So what the BIA said just fundamentally does not make sense because the only determination that the I.J. made, the only analysis, was whether or not this crime shows future dangers. Well, the I.J. said both things, right? The I.J. said I think that his mental health issues show that he is going to be dangerous in the future, and the I.J. also said that while his mental health exacerbated his commission of the crime, I don't think that that outweighs the intentionality and the culpability of it, right? He says both of those things. Yes, he does.  Okay, thanks, Mr. Taubman. You've reserved – Tabor, you've reserved time for rebuttal. We'll turn to you again, but let's turn to the government. And please don't forget we're looking for the record site for the letter. Ms. Doe. Oh, sorry. You're on mute, Ms. Doe, so let's unmute the thing and then proceed. My apologies. Good morning, Honors. My name is Linda Doe, and I represent the respondent, the United States Attorney General. Here, the agency properly and reasonably found that Petitioner's conviction for attempted assaults in the second degree, wherein he attempted to repeatedly stab the victim, is a particularly serious crime, such that it disqualifies him from withholding a removal. Here, Petitioner contends that he was deprived of the opportunity to testify in support of his mental health at the time of defense. However, Petitioner does not point to where during the March 2022 hearing transcript where he had affirmatively set forth before the immigration judge that he had wished to testify. As the immigration judge noted, Petitioner was provided a full day, which didn't present any arguments and evidence in support, and Petitioner, during the hearing, did not inquire or make an affirmative proffer of Petitioner's testimony. Accordingly, he has not shown that the immigration judge erred in that regard. Additionally, Petitioner's counsel during that hearing had pointed out- Yeah, so how does one appropriately consider BZR, which asks us to contextualize the criminal conviction in question for a PSC, without additional testimony? Especially since there are things like who the victim was, what kind of shape the Petitioner was in at the time, what was going on through his mind. Why would there have been a remand if not for the need to further develop the record in that case? Well, Your Honor, Petitioner had submitted a declaration setting forth his mental state during the commission of his offenses. Petitioner's declaration specifies that he did not recall all the fights that he had been involved in, but speculated that it was due to the provocation of others and that he was unable to calm himself. Petitioner, however, did recall that his 2012 offense had been in defense of his mother and an altercation with his father. Here, Petitioner didn't explain why he could not have provided details of his 2018 offense in the same declaration. Additionally, the same information is provided in Petitioner's criminal history charts, wherein, again, he states that the 2012 offense is in defense of his mother, making no comment as to his mental health or mental status during his 2018 offense. So Petitioner, as contrary to what you're saying, that he's precluded from- Correct. So in the first PSC hearing that eventually got remanded, he makes an argument that actually you should not consider this a particularly serious crime because the mental illness was responsible for the conduct, right? And so, therefore, it should be treated differently. Correct, Your Honor. So he made that argument. He introduced evidence in support of that argument. It's just that the I.J. thought that it wasn't relevant, right? No, I don't believe that the I.J. found it irrelevant. The I.J. did consider the evidence Petitioner had submitted. Well, eventually, the I.J. And he considered- Excuse me? Eventually, the I.J. did. So on the first PSC hearing, he introduces evidence on this point. Then in the CAP hearing, he introduces evidence about the theory of how he would end up being tortured. And that theory is that when he's not medicated, he becomes violent. And so he introduces evidence about the relationship between his propensity for violence and his mental health conditions, right? Your Honor, according to the record here, Petitioner's counsel had set forth argument and noting that matter of BZR had been referred to the Attorney General. During that 2022 hearing, and this is in addition to the briefing and evidence in support he had submitted. During that hearing, the immigration judge had issued a particular serious crime determination considering Petitioner's mental health, despite noting that matter of BZR was still pending. And then on the part of the board's remand, it noted that the immigration judge had erred by failing to include its PSC determination in the decision itself. And at the time of the immigration judge's decision, matter of BZR had indeed been heard at that time. Here, the board remanded the proceedings to the immigration judge to improperly apply matter of BZR, noting that the immigration judge had legally erred by failing to do so. Accordingly, where the board remand was based on a legal error, not a need for new information where the facts and circumstances as well as the evidence had already been submitted in support of that issue. So I understand one argument to have been upon remand, he has a statutory entitlement to present evidence and cross-examine government witnesses as a matter of statutory withholding under 1229A, B4B. Right? That's the argument that was made, an argument that was made. And I don't think the BIA addresses that argument. Am I wrong about that? I believe that the board found that... Oh, if you'll remind your honors. They said that Petitioner wanted to submit additional evidence in support of a cat claim or his cat deferral. Petitioner did not specify what it was that he wished to enter, and Petitioner was on notice of the remand to the immigration judge and did not submit new evidence. Additionally, to the extent that he believes that the immigration judge had erred, Petitioner could have filed a motion to consider of the immigration judge's decision or a motion to reopen with the evidence he had sought to submit to the immigration judge. Petitioner was represented by counsel, and he was aware that the case had been remanded to the immigration judge and did not wait to... Just to be precise about this question, about whether the BIA addressed his ability to introduce evidence, the BIA says in the decision that we're reviewing, the immigration judge found that the January 3, 2023 remand from this board did not require to take additional testimony or allow for further testimony, and the immigration judge found it unnecessary to do so. The immigration judge properly reviewed the documentary record as of June 6, 2022, and all prior testimony in accordance with the board's instructions on remand. Further, the respondent does not point to any additional evidence he sought to present to support his claims. As the respondent has not established that any claim violation resulted in him being prejudiced or deprived of receiving a full and fair hearing with the option to be heard, he has not established a due process violation. I understand that that's in the context of constitutional due process, but doesn't that argument also mean that he had a reasonable opportunity to develop his claims? I concur, Your Honors. Well, I guess just to, I guess, make sure I understand. All of that I understood to be within the response to a constitutional argument, a due process argument to an entitlement to present evidence. There is also, I think, a statutory argument of an entitlement to present evidence, and point to me where the BIA addresses that argument. Well, I would argue that's assumed in the same paragraph that you just noted. Here, Petitioner did not show that he was deprived of any opportunity to submit evidence, except for the underlying hearings. Petitioner, the citations that Petitioner relies upon is in removal proceedings, not necessarily on a motion for remand. And here, had Petitioner intended to submit evidence, normally a motion for, it would be accompanied by the motion for remand. Here, Petitioner was provided ample opportunity to submit an abundance of evidence as part of the claims. Are you arguing it was waived? You're not disputing that they have a statutory right or a statutory ability to get more evidence, right? You're not disputing that, but that's what the particular provision that says that entitles them. Is that right? I would argue that under the underlying hearings, Petitioner had a full and fair hearing. Pursuant to remand, Petitioner isn't entitled to submit additional evidence. If Petitioner had submitted a motion to reopen or a motion to remand with the evidence included, then the agency would normally rule on that motion. Here, Petitioner did not offer the evidence that he would cease to submit to the agency. So you're saying that this analysis of the constitutional due process claim is the same analysis that would apply to any claim that he didn't have a reasonable opportunity to develop his claims, right? And he could have identified evidence that he was not able to introduce but did not. So we argue they're not mutually exclusive. No, they're not mutually exclusive. I guess one question is, so I can imagine analysis that said, he makes a due process argument as entitlement to present evidence. We reject that, and, you know, there's no, I think the test under Garcia-Vallada is he must allege some cognizable prejudice fairly attributable to the challenged process. And we don't find that here. And then the next analysis would be, it would follow, and he makes an argument of an entitlement to process as a statutory matter under 1229A.B.4.B. That, too, requires a prejudice analysis, and for the reasons we already addressed under the constitutional argument, the same holds true here. What I don't see is the BIA saying, recognizing at all that there's a statutory argument being made and coming to a conclusion that a prejudice analysis attaches, and for the same reasons there's no prejudice because he has proffered evidence that would lead to a different conclusion regarding the PSC. And my basic question is, are we just, are you arguing we're to infer all of that from the constitutional analysis the BIA made? Because it's not, or is it there expressly, and I'm not sure. We would argue it applies in both. Sorry. Go ahead. My apologies. Go ahead. We would argue that it applies in both contexts, Your Honor. So you're saying there's a prejudice requirement to both, or that the same, that saying one automatically addresses the second? We would argue that the same one necessarily addresses the second. Okay. Can I ask a question about what may be legal errors? I understood the IJ to still be looking at past and future danger profiles, and that the BIA attempted to say, you know, we know that part of it is improper, but we're going to uphold anyway. And can you explain to me how you think that the two can be separated when something like that was so part of it? I mean, it's been the, sometimes you've heard it as the egg being unscrambled argument. Well, Your Honors, the Board considers legal determinations as well as discretionary determinations and a judgment de novo. And the Board specifically indicated that it did not rely on the immigration judge's decision in that regard, the AR-5, Note 7. And as the Board noted, it solely focused on Petitioner's 2018 conviction to find that that seriousness and the dangerousness of the offense, where, again, he attempted to repeatedly stab the victim, denotes that he is a danger to the community. Okay. Can I ask? I'm sorry. So thank you. I got that argument down. What about the second error? It looks to me that he collapsed the two-step, or that I.J. collapsed the two-step inquiry into what is effectively a one-step inquiry, which is basically, you know, because the crime is particularly serious, his mental health didn't change the seriousness of it. And it makes it a circular argument where it's going back and forth as opposed to looking at them in two distinct pieces. Do you have a response to that? Because the step two part of it analyzed the nature of the conviction anyway, right? And that, I understand, to be the step one. My understanding of the Board's decision was that the Board looked to the elements, then considered the nature of the offense, the individual facts and circumstances, as well as the sentencing information, to determine that Petitioner is or has been, by final judgment, been convicted of a particular serious crime. The Board further then considered the mental health conditions and noted that it didn't mitigate or render his offense any less serious or such that he was not a danger to the community. Okay. We heard from opposing counsel a moment ago that if Mr. Diaz were able to testify that he was having a psychotic episode at the time of his assault, that that would show that under the circumstances it should not be considered a particularly serious crime. Do you think that that's correct? No, Your Honor. As far as the matter of EZR, it provides an example of when it would not necessarily render Petitioner having been convicted of a particular serious crime, noting when a victim had attacked his aggressor in suffering from PTSD. Again, here Petitioner submitted evidence that... And that's because there's a logical assumption being made that in the future, the Petitioner wouldn't engage in similar conduct against people who weren't an aggressor in a domestic violence context, correct? That's the way logically that assessment's working. It's making a prediction about future dangerousness in light of the circumstances of the particular crime? I would argue that's an inference that's made from the determination, Your Honor. And here... But an inference that leads to a future prediction. Yes, Your Honor. That he would not be attacking any other random persons within the community. Right. But you're not literally making a future prediction, right? All the case law that says you're supposed to be focused on the nature of the offense still holds. The question is, is this offense under the circumstances one that would show ongoing dangerousness, right? Yes. Whether he is a danger. And that's exactly what we have here, Your Honor. The evidence supports finding that Petitioner is a danger to the community. Based on this 2018 offense alone. Notwithstanding Petitioner's extensive criminal history. And as Petitioner had argued, it was erroneous for the immigration judge to consider his likelihood of future misconduct. And here Petitioner argues that it's wrong to consider it, then wishes it to be considered as well. Here the board solely relied on the 2018 conviction and found that it does render him a danger to the community. So, we also heard from opposing counsel that when the BIA said, On appeal, the respondent does not explain how the existing record evidence relating to his mental health is probative of his intent in a way that impacts the dangerousness analysis. Except for suggesting that it is possible he was experiencing psychotic symptoms at the time of the crime. Mr. Diaz is suggesting that that means the BIA was saying, We're not persuaded that he was experiencing psychotic symptoms at the time of the crime. And if we were, there might be a different outcome. Is that how you understand the BIA's decision? Oh, no, Your Honor. I think it's apparent the BIA wanted an explanation from Petitioner as to how he believes that his mental health would render it not dangerous. Even in light of a psychosis or delusions. Right, and so the BIA sort of takes for granted that there's some kind of psychosis. And the question is whether there's something about the circumstances of the crime that means that it's analogous to the abuse victim attacking the abuser. I agree, Your Honor. And here Petitioner had submitted a neuropsychological evaluation suggesting that they are opining that it was possible that his mental health conditions was a reason for motivation for all of his offenses. The psychologist states that it was likely that many, if not all, of Petitioner's legal difficulties stemmed from his psychiatric and cognitive difficulties. Right, so there was evidence in the record that he was having a psychotic episode when he was violent before, right? Not as establishing that he was definitively undergoing a psychosis, but that he suspected or speculated that he was. Okay, and then can I ask you a question about this earlier idea about the constitutional due process argument versus the statutory one? So there's a suggestion in the briefing that maybe constitutional due process requires a showing of prejudice. But if the agency has to comply with a statute that gives you the right to develop your case, you don't need to show prejudice. Do you think that that's correct? No, Your Honor. I believe that showing of prejudice is required. Do you believe there are any statutory violations that do not require a showing of prejudice? I believe that it's the statutory right to counsel, and here Petitioner had the right to counsel. Right, but that's a statutory violation that doesn't require a showing of prejudice, so to a competency hearing, right? So if somebody wasn't given a competency hearing and they make an argument that they have statutory entitlement to a competency hearing, we wouldn't say, well, what evidence would you put in to establish incompetence? There's cases that say no prejudice is required, and it's simply a remand for a competency hearing, right? Yes, Your Honor. So the question, I think, is, one question is, is a statutory right under 1229 AB 4B to present evidence, cross-examine witnesses and the like, is that parallel to the kinds of statutory rights that have previously been determined not to require a prejudice analysis? Well, we argue, no, Your Honors. First instance, again, we would simply note that there was no error here. Petitioner had the opportunity to do so. Second, Your Honors, in seeking a remand, it's required to show that the outcome would be different pursuant to remand. Here, a right petitioner offered an opportunity to submit evidence. He hasn't shown why. That's a prejudice. But the reason you have to show that, the reason you have to show that is what? That something like the right to counsel, we can't necessarily predict what the outcome would have been if he had the counsel of his choice, and maybe it doesn't even matter because the right to counsel of your choice is a fundamental thing. But if you didn't get to present additional evidence, that's the way you just routinely evaluate for prejudice. That's susceptible to an evaluation as to whether it was prejudicial, right? Well, again, Your Honors, this is something exactly what the agency would do. Petitioner would submit a motion to reopen to the agency, but the evidence he seeks to proffer, and that did not occur here. That's why I'm asking, sorry, you're arguing that it's waived. That's why I asked my question earlier. My apologies. I misunderstood. I mean, so I guess you're not disputing, I think, that there's a statutory claim. You're not disputing that there are some claims without prejudice. You are saying this one you have to show prejudice, but the way you keep telling us that what they didn't do, you're saying that they didn't ask for it. So I'm asking, are you actually disputing whether or not they had to show prejudice, or are you saying that they waived it? My apologies, and yes, they did waive it in this instance, Your Honor.  Well, you said they waived it, but you can also understand it as if you don't identify the evidence that you would have introduced and how it would make a difference. You also just – the argument doesn't succeed, right? Correct, Your Honors. If there are no further questions, the government respectfully rests on its brief. Okay. Thank you very much, Ms. Doe. I'll turn it back to Mr. Tabor on the phone. Thank you, Your Honor. First, three points. First, Mayor Culpa, there is not a cite in our brief to the letter. I'd request permission to put in a post-argument submission addressing this issue. Briefly. Your representation is that post-remand, before the BIA – before the IJ's decision under BZR, there was a request made. I have a memory of seeing a request. I'm less certain now that it is in the CAR or not, and I want to – I don't want to pie the ball on this. Well, how about we consult after the argument, and we'll issue an order that sets a schedule for the parties to address it if we're interested in that. Thank you, Your Honor. I appreciate the opportunity to – I just don't want to make a misrepresentation on the record. The second point, Your Honor referenced the right to submit additional evidence. Respectfully, we see this as the right to submit any evidence at all. This is a very unusual posture. The particularly serious crime hearing occurred before – Well, that's not right. I mean, you did introduce evidence, correct? I mean, that's not – you did not deny the right to introduce any evidence at all. Well, not mental health evidence on the particularly serious crime issue because that hearing was conducted before BZR, and the IJ made it very clear. Well, it was conducted before BZR, but the argument that was raised there that you thought should be considered and before BZR the IJ decided not to credit was that the fact that the mental health condition affected his conduct mattered in evaluating whether it's a particularly serious crime, right? Again, that was the argument that counsel was left to without the opportunity to put in this relevant evidence. And then once BZR has decided it was clear that the IJ was incorrect, the evidence was relevant and should have been heard, at the merits hearing counsel asked for an opportunity to reopen that issue, no, move on, counselor. So there was never an opportunity to put that evidence in in the first place. That is the clear due process violation. And the evidence, to be precise, is that he was having a psychotic episode at the time of the assault. It would be his testimony regarding his mental health at the time of the assault, among other relevant factors that are not in the record below and that he could have presented for testimony. To be precise, what are the other relevant factors? Any relationship or not between him and the victim, whether the victim was the aggressor in some way. None of this is in the record, and Mr. Diaz's testimony would be instructive. Would it matter if the victim was the aggressor? Potentially in terms of his mental health situation and whether he'd be dangerous to people who are not. You know, we don't walk down the street every day and encounter someone being physically violent towards us, and so that would be a relevant circumstance. But again, he didn't have the opportunity to testify about it. And it's just like this Court's decision in Malletz, I believe Judge Nathan was on the panel, where the court, the IJ had denied asylum relief for lack of evidence of someone's belonging to a minority church in Ukraine, Russian Orthodox Church. At the hearing, he had tried to put in evidence from his Russian Orthodox priest about his belonging. The IJ said, no, I don't need to hear that, and then denied it on that very issue. That's exactly what the BIA did here by saying that we have determined that there is no evidence in the record that he had psychosis. Well, of course there's no evidence in the record. He was not able to testify about those symptoms at the hearing. If I understood the BIA not to be saying there's no evidence in the record that he had psychosis, but if the way I understand what the BIA said was we accept that he had psychosis or that this schizoaffective disorder was in some sense responsible for his conduct, but that doesn't outweigh the fact that he assaulted somebody, and there's nothing about the circumstances there that show – that mitigate the dangerous – or that counteract the crime as an indicum of dangerousness, would that have been a permissible thing for the BIA to say? I still think the due process error was already baked in here because of the lack of opportunity to present the evidence in the first place. That does – that would change the facts from what are here. Respectfully, I think there's no other way to read he does not point to record evidence supporting his assertion other than this is evidence that's required. It's missing. We're deciding based on the missing evidence. It's just like mallets. And we would ask the court to remand on that basis for reconsideration of the evidence. Thank you. Thank you very much, Mr. Taylor. The case is submitted.